1

2

3

4

5

6

7

8

9                              UNITED STATES DISTRICT COURT

10                            EASTERN DISTRICT OF CALIFORNIA

11

12    ANNETTE S. RUIZ,

13                   Plaintiff,                     No. 2:24-cv-00489-TLN-SCR

14

15          v.                                      **ORDER**

16    MEDTRONIC, INC. et al.,

17                   Defendants.

18

19

20

21

22

23          Medtronic, Inc. and Covidien LP (collectively "Defendants") move to dismiss this

24    products liability action.  (ECF No. 16.)  Plaintiff Annette S. Ruiz ("Plaintiff") opposes and in the

25    alternative, seeks leave to amend.  (ECF No. 17.)  Defendants filed a reply.  (ECF No. 19.)  For

26    the reasons set forth below, the court GRANTS Defendants' motion.

27    ///

28

1

**I.     BACKGROUND**

2          In June 2021, Plaintiff underwent a surgical procedure for a hysterectomy at Kaiser

3    Hospital.  (ECF No. 13 ¶ 13.)  During the surgery, a screw or pin from a tool called the

4    Endoclinch Grasper (hereinafter "Grasper tool") "separated from the tool and lodged itself in the

5    plaintiff's body."  (*Id.* ¶¶ 14–15.)  Following the surgery, Plaintiff experienced pain and loss of

6    quality of life.  (*Id.* ¶ 16.)  She also underwent continued medical treatment to identify the reasons

7    for her post-surgical pain.  (*Id.*)

8          In November 2021, an x-ray revealed there was an object inside Plaintiff's pelvic cavity

9    "from an unknown source."  (*Id.* ¶ 17.)  In January 2022, Plaintiff's surgeon informed her the

10   object was a pin or screw that had dropped from the Grasper tool during her procedure.  (*Id.* ¶

11   18.)  A few months later, Plaintiff underwent another surgery to remove the object from her body.

12   (*Id.* ¶ 19.)  After this second surgery, "Dr. Apple" told Plaintiff the object came from the Grasper

13   tool and gave her an "exemplar tool[.]"  (*Id.*)  Dr. Apple also told Plaintiff a defect report had

14   been filed and Kaiser had stopped using the Grasper tool.  (*Id.*)

15         In November 2023, Plaintiff filed suit in the Sacramento County Superior Court against

16   Defendants.  (ECF No. 1-2.)  Defendants design, manufacture, market, and sell the Grasper tool.

17   (ECF No. 13 ¶¶ 2–3.)  Plaintiff alleges the product was defective when it left Defendants' control

18   and was being used in a manner reasonably foreseeable by Defendants at the time Plaintiff was

19   injured.  (*Id.* ¶ 22.)

20         Defendants removed the action on diversity grounds and Plaintiff subsequently filed a

21   First Amended Complaint.  (ECF Nos. 1, 13.)  Plaintiff alleges three causes of action under

22   California law: (1) strict liability; (2) negligence; and (3) breach of warranty.  (ECF No. 13 ¶¶

23   23–46.)  Defendants now move to dismiss the First Amended Complaint in its entirety.  (ECF No.

24   16.)  The motion is fully briefed.  (ECF Nos. 17, 19.)

25         **II.     LEGAL STANDARD**

26         A motion to dismiss for failure to state a claim upon which relief can be granted under

27   Federal Rule of Civil Procedure ("Rule") 12(b)(6) tests the legal sufficiency of a complaint.

28   *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  Rule 8(a) requires that a pleading contain

1    "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R.

2    Civ. P. 8(a); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009).  The factual allegations of

3    the complaint must be accepted as true.  *Cruz v. Beto*, 405 U.S. 319, 322 (1972).  Additionally,

4    the court must give the plaintiff the benefit of every reasonable inference to be drawn from the

5    "well-pleaded" allegations of the complaint.  *Retail Clerks Int'l Ass'n v. Schermerhorn*, 373 U.S.

6    746, 753 n.6 (1963).  A plaintiff need not allege "'specific facts' beyond those necessary to state

7    his claim and the grounds showing entitlement to relief."  *Bell Atl. Corp. v. Twombly*, 550 U.S.

8    544, 570 (2007) (internal citation omitted).

9        Nevertheless, a court "need not assume the truth of legal conclusions cast in the form of

10    factual allegations."  *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986).

11    While Rule 8(a) does not require detailed factual allegations, "it demands more than an

12    unadorned, the defendant-unlawfully-harmed-me accusation."  *Iqbal*, 556 U.S. at 678.  A

13    pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the

14    elements of a cause of action."  *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678

15    ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory

16    statements, do not suffice.").  Thus, "[c]onclusory allegations of law and unwarranted inferences

17    are insufficient to defeat a motion to dismiss" for failure to state a claim.  *Adams v. Johnson*, 355

18    F.3d 1179, 1183 (9th Cir. 2004) (citations omitted).  Moreover, it is inappropriate to assume the

19    plaintiff "can prove facts that it has not alleged or that the defendants have violated the . . . laws

20    in ways that have not been alleged."  *Associated Gen. Contractors of Cal., Inc. v. Cal. State*

21    *Council of Carpenters*, 459 U.S. 519, 526 (1983).

22        Ultimately, a court may not dismiss a complaint in which the plaintiff has alleged "enough

23    facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  "A claim

24    has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

25    reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at

26    680.  While the plausibility requirement is not akin to a probability requirement, it demands more

27    than "a sheer possibility that a defendant has acted unlawfully."  *Id.* at 678.  This plausibility

28    inquiry is "a context-specific task that requires the reviewing court to draw on its judicial

1  experience and common sense." *Id.* at 679.  Thus, only where a plaintiff fails to "nudge [his or

2  her] claims . . . across the line from conceivable to plausible[,]" is the complaint properly

3  dismissed.  *Id.* at 680 (internal quotations omitted).

4      **III.**   **ANALYSIS**

5         Defendants move to dismiss each of Plaintiff's claims for failure to allege specific facts.

6  (ECF No. 16.)  According to Defendants, the only factual allegations in the entire First Amended

7  Complaint "are the date of the alleged injury, the place of injury, and the elements of each claim

8  under California law."  (*Id.* at 12.)  Plaintiff opposes contending the level of specificity

9  Defendants suggest is "unrealistic" and not required at this stage.  (ECF No. 17 at 4.)  The Court

10  evaluates each claim below.

11          A.    <u>Strict Liability</u>

12         In the First Amended Complaint, Plaintiff broadly alleges Defendants are strictly liable

13  because they "designed, built, manufactured, marketed, issued warnings, failed to warn,

14  distributed, and sold the [Grasper tool][.]"  (ECF No. 13 ¶ 26.)  In moving to dismiss, Defendants

15  contend Plaintiff fails to plausibly allege facts to satisfy any of these theories of liability.  (ECF

16  No. 16 at 13.)  In opposition, Plaintiff argues Defendants "completely ignore" the new facts

17  alleged in the First Amended Complaint.  (ECF No. 17 at 5.)  A manufacturer is strictly liable for

18  injuries caused by three different types of defects: (1) a manufacturing defect, (2) a design defect,

19  or (3) a warning defect.  *Anderson v. Owens-Corning Fiberglas Corp.*, 53 Cal. 3d 987, 995

20  (1991).  The Court evaluates Plaintiff's claim under each theory below.

21             *i.*    *Manufacturing Defect*

22         To adequately plead a manufacturing defect under California law, Plaintiff must establish

23  the Grasper tool "differs from the manufacturer's intended result or from other ostensibly

24  identical units of the same product line[,]" *Barker v. Lull Eng'g Co.*, 20 Cal. 3d 413, 454 (1978),

25  and the alleged defect caused the plaintiff's injury, *Soule v. Gen. Motors Corp.*, 8 Cal. 4th 548

26  (1994).  Therefore, to survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6),

27  a plaintiff "must identify/explain how the [product] either deviated from [the manufacturer's]

28  intended result/design or how the [product] deviated from other seemingly identical [products]."

1   *Garcia v. Sanofi Pasteur Inc.*, 617 F. Supp. 3d 1169, 1172 (E.D. Cal. 2022) (citation omitted).

2   Simply alleging the product has a manufacturing defect is insufficient. *Id.*

3           Here, Defendants argue Plaintiff's manufacturing defect claim should be dismissed

4   because Plaintiff does not even allege or show that a Medtronic product was used during the

5   subject procedure.  (ECF No. 16 at 15.)  Plaintiff contests this, arguing she did in fact allege a

6   Medtronic product was used.  (ECF No. 17 at 7–8.)  Specifically, Plaintiff cites the allegations in

7   paragraph fourteen, where she alleges that during her procedure the Grasper tool was used.  (ECF

8   No. 13 ¶ 14.)  The paragraph goes on to state the Grasper tool "was designed, manufactured,

9   marketed and/or sold by the defendants herein including Medtronic and Covidien." (*Id.*)

10  Reading these two sentences together and drawing all reasonable inferences in favor of Plaintiff,

11  the Court finds Plaintiff has sufficiently alleged a Medtronic product was used during her

12  procedure.

13          Defendants also argue Plaintiff "fatally ignores causation."  (ECF No. 16 at 16.)

14  According to Defendants, Plaintiff needs to have alleged how the defect in the Grasper tool led to

15  the pin or screw being left in her body cavity.  (*Id.*)  Defendants argue that Plaintiff cannot allege

16  only one possible explanation for her injuries without supporting factual allegations.  (*Id.*)

17  Relying on *Barrett v. Atlas Powder Co.*, 86 Cal. App. 3d 560, 564 (1978), Defendants contend

18  causation "cannot be inferred from the mere fact that the product was involved in an accident or

19  injury." (*Id.*)  However, Defendants cite *Barrett* out of context.  In *Barrett*, the Court of Appeal

20  discussed how liability is established at the summary judgment stage.  86 Cal. App. 3d at 564

21  ("[T]o establish liability, it is not enough that the action happened, nor may liability inferences

22  favorable to plaintiff be drawn from that fact.").  At the motion to dismiss stage, where the Court

23  now finds itself, Plaintiff must be given the "benefit of every reasonable inference[.]"  *Retail*

24  *Clerks Int'l Ass'n*, 373 U.S. at 753 n.6.  Here, Plaintiff alleges as a direct result of the defect, the

25  Grasper tool failed during her surgery and resulted in a piece of the product being left inside her,

26  which caused her pain.  (ECF No. 13 ¶¶ 27–31; ECF No. 17 at 16–17.)  At this stage, the Court

27  finds Plaintiff has sufficiently pleaded causation based on these allegations.  *See also Woods v.*

28  *Davol, Inc.*, No. 16-CV-02616-KJM-CKD, 2017 WL 3421973, at *4 (E.D. Cal. Aug. 9, 2017)

1    (finding similar allegations sufficient); *Hammarlund v. C.R. Bard, Inc.*, No. 2:15-CV-05506-

2    SVW-JEM, 2015 WL 5826780, at *4 (C.D. Cal. Oct. 2, 2015) (same).

3              Finally, Defendants argue Plaintiff's manufacturing defect claim fails because she does

4    not allege the way in which the Grasper tool differed from its intended design.  (ECF No. 16 at

5    14–15.)  In opposition, Plaintiff acknowledges she must explain how the Grasper tool deviated

6    from the manufacturer's intended design but does not cite to any allegations in the complaint that

7    describe the manufacturing defect.  (ECF No. 17 at 5.)  Instead, Plaintiff merely reiterates her

8    allegation that the product was defective when it left the control of each Defendant.  (*Id.* at 6

9    (citing ECF No. 13 ¶ 22).)  This bare conclusion is not enough to sufficiently allege a strict

10   liability claim premised on a manufacturing defect.  *See, e.g. Weaver v. Ethicon, Inc.*, 737 F.

11   App'x 315, 317 (9th Cir. 2018) (unpublished) (affirming dismissal of manufacturing defect claim

12   in part because there were no allegations about the nature of the manufacturing defect);

13   *Hammarlund*, 2015 WL 5826780, at *4 (finding allegation that Defendants' product was found in

14   six pieces after it was implanted in Plaintiff was insufficient to establish a manufacturing defect);

15   *cf. Woods*, 2017 WL 3421973, at *5 (denying motion to dismiss manufacturing defect claim

16   because Plaintiff described the product defect).

17             Accordingly, to the extent Plaintiff seeks to bring her strict liability claim based on a

18   manufacturing defect theory, such a claim is DISMISSED with leave to amend.  *Lopez v. Smith*,

19   203 F.3d 1122, 1130 (9th Cir. 2000) (stating "[l]eave to amend should be granted if it appears at

20   all possible that the plaintiff can correct the defect" (internal quotation marks and citation

21   omitted)).

22                            *ii.    Design Defect*

23             There are two separate ways to establish a design defect claim under California law.  First,

24   under the "consumer expectations test" a product's design is defective if the product fails to

25   "perform as safely as an ordinary consumer would expect when used in an intended or reasonably

26   foreseeable manner."  *Webb v. Special Elec. Co.*, 63 Cal. 4th 167, 180 (2016) (internal citations

27   omitted).  Second, under the "risk-benefit test" a product's design is defective if "the risk of

28   danger inherent in the product's design outweighs the design's benefits."  *Id.*

                                            6

1     Defendants contend Plaintiff's First Amended Complaint does not contain clear

2     allegations about a safe and feasible alternative design. (ECF No. 16 at 17.) Additionally,

3     Defendants argue Plaintiff "makes no effort to show" the Grasper tool violated minimum safety

4     expectations of an ordinary consumer or contained dangers which outweighed its benefits. (*Id.* at

5     18.) Without these allegations, Defendants argue Plaintiff's strict liability claim premised on a

6     design defect theory fails. (*Id.*) Defendants also argue Plaintiff fails to sufficiently allege

7     causation, but as discussed above, the Court finds Plaintiff's allegations on this point sufficient.

8          In opposition, Plaintiff argues her First Amended Complaint clearly alleges how the

9     Grasper tool violated minimum safety expectations and again reiterates her allegations. (ECF No.

10    17 at 8.) Specifically, Plaintiff contends the Grasper tool did not perform "as safely as an

11    ordinary consumer would have expected it to perform" because a screw or pin separated from the

12    tool during her surgery. (ECF No. 17 at 11; ECF No. 13 ¶ 15.) Based on this, the Court

13    presumes Plaintiff's defect theory is based on the "consumer-expectations test." In reply,

14    Defendants maintain Plaintiff provides no factual allegations to support a design defect theory

15    under either of the two tests. (ECF No. 19 at 8.)

16         In *Lucas v. City of Visalia*, which both parties cite in support of their respective

17    arguments, the court dismissed the design defect claim because the plaintiff neither *described*

18    *how* the product at issue failed to meet the ordinary consumer's safety expectations nor *explained*

19    *how* the particular product design caused plaintiff harm. 726 F. Supp. 2d 1149, 1155 (E.D. Cal.

20    2010). Here, Plaintiff makes similar failures. While she does allege a pin or screw separated

21    from the Grasper tool, there are no allegations regarding *how* this failed to meet the minimum

22    expectations of the ordinary consumer. (ECF No. 13 ¶ 15.) Without such allegations, Plaintiff

23    does not sufficiently allege a plausible design defect.

24         Accordingly, to the extent Plaintiff seeks to bring her strict liability claim based on a

25    design defect theory, such a claim is DISMISSED with leave to amend. *Lopez*, 203 F.3d at 1130.

26                    *iii.*        *Failure to Warn*

27         Under California law, a manufacturer is liable for strict liability under a failure to warn

28    theory if Defendants "did not adequately warn of a particular risk that was known or knowable in

7

1    light of the generally recognized and prevailing best scientific and medical knowledge available

2    at the time of manufacture and distribution." *Carlin v. Superior Ct.*, 13 Cal. 4th 1104, 1112

3    (1996). California also applies the "learned intermediary" doctrine, which provides that the duty

4    to warn in the case of medical devices runs to the physician — not the patient. *See Zetz v. Bos.*

5    *Sci. Corp.*, 398 F. Supp. 3d 700, 706 (E.D. Cal. 2019) (citing *Carlin*, 13 Cal. 4th at 116).

6         Defendants argue Plaintiff's strict liability claim premised on a failure to warn theory also

7    fails. (ECF No. 16 at 18.) Defendants argue Plaintiff's complaint only provides conclusory

8    allegations — nothing in the First Amended Complaint explains which warnings or materials

9    Plaintiff's surgeon reviewed, which warnings were inadequate, and in what ways they were

10   inadequate. (*Id.* at 19.) Specifically, Defendants contend Plaintiff fails to allege how the lack of

11   or inadequate warnings would have altered her physician's conduct. (*Id.*) In opposition, Plaintiff

12   argues the First Amended Complaint states a plausible claim for strict liability based on a failure

13   to warn theory and charts out the elements and corresponding allegations she claims are

14   sufficient. (ECF No. 17 at 11–13.)

15        However, despite Plaintiff's arguments to the contrary, the allegations in the complaint are

16   entirely conclusory and simply regurgitate the legal standard. This is insufficient at this juncture.

17   For example, Plaintiff alleges Defendants had specific knowledge the Grasper tool was "defective

18   and dangerous" or could and should have reasonably known "by application of scientific

19   knowledge available at the time the [Grasper tool] was manufactured, designed and built[.]"

20   (ECF No. 13 ¶ 27.) This is simply a bare legal conclusion unsupported by any factual allegations.

21   *Cf. Tapia v. Davol, Inc.*, 116 F. Supp. 3d 1149, 1158 (S.D. Cal. 2015) (finding "Plaintiff

22   sufficiently alleged what Defendant failed to warn about"). To allege a plausible claim for a

23   failure to warn, Plaintiff should include allegations that "identify which danger was not warned

24   against, explain that the danger was substantial, and that the danger was known or reasonably

25   knowable, or explain how any warning that was given was inadequate." *Marroquin v. Pfizer,*

26   *Inc.*, 367 F. Supp. 3d 1152, 1161 (E.D. Cal. 2019) (collecting cases).

27        Accordingly, to the extent Plaintiff seeks to bring her strict liability claim based on a

28   failure to warn theory, such a claim is DISMISSED with leave to amend. *Lopez*, 203 F.3d at

                                              8

1  1130.

2          B.    <u>Negligence</u>

3        Defendants also move to dismiss Plaintiff's negligence claim for the same reasons it seeks

4  to dismiss Plaintiff's strict liability claim.  (ECF No. 16 at 3.)  In opposition, Plaintiff argues she

5  has plausibly stated a claim for negligence.  (ECF No. 17 at 14–17.)

6        The theories of negligence and strict liability parallel and supplement each other[.]"

7  *Bettencourt v. Hennessy Indus., Inc.*, 205 Cal. App. 4th 1103, 1118 (2012).  To recover against a

8  manufacturer under either theory, "a plaintiff must prove that a defect caused injury."  *Merrill v.*

9  *Navegar, Inc.*, 26 Cal. 4th 465, 479 (2001) (citation omitted).  However, under a negligence

10  theory, a plaintiff must also prove "an additional element, namely, that the defect in the product

11  was due to negligence of the defendant."  *Id.* (internal quotation and citation omitted).

12        Plaintiff alleges Defendants negligently designed and manufactured the Grasper tool

13  rendering it "unsafe, dangerous and hazardous" and negligently failed to provide sufficient

14  warnings.  (ECF No. 13 ¶ 28; ECF NO. 17 at 12.)  As a direct result of Defendants' negligence,

15  Plaintiff alleges the Grasper tool failed during her surgery and resulted in a piece of the product

16  being left inside her, which caused her pain.  (ECF No. 13 ¶ 41; ECF No. 17 at 16–17.)  However,

17  the same deficiencies discussed above with Plaintiff's strict liability claim apply to Plaintiff's

18  negligence claim here.  Plaintiff's First Amended Complaint fails to set forth factual allegations

19  describing the manufacturing defect, how the defect differed from its intended design, and about

20  what Defendants failed to warn Plaintiff's surgeons.  Without such factual allegations, Plaintiff

21  does not sufficiently allege a negligent products liability claim.  *See, e.g.*, *Garcia*, 617 F. Supp. 3d

22  at 1175 (finding similarly).

23        Accordingly, the Court GRANTS Defendants' motion to dismiss Plaintiff's negligence

24  claim with leave to amend.  *Lopez*, 203 F.3d at 1130.

25          C.    <u>Breach of Warranty</u>

26        Finally, Defendants contend Plaintiff fails to plausibly allege either an express or an

27  implied warranty claim under California law.  (ECF No. 16 at 20.)  Plaintiff disagrees.  (ECF No.

28  17 at 17.)  The Court analyzes each type of warranty claim below.

9

1          *i.*          *Express Warranty*

2          A breach of an express warranty occurs when "a seller makes a representation or promise

3    to which its goods do not conform." *Sukonik v. Wright Med. Tech., Inc.*, No. 14-CV-08278-BRO-

4    MRWX, 2015 WL 10682986, at \*11 (C.D. Cal. Jan. 26, 2015) (citing *Brown v. Superior Ct.*, 44

5    Cal. 3d 1049, 1071 (1988)).  To plead breach of an express warranty, Plaintiff must allege facts

6    sufficient to show that "(1) the seller's statements constitute an affirmation of fact or promise or a

7    description of the goods; (2) the statement was part of the basis of the bargain; and (3) the

8    warranty was breached." *Weinstat v. Dentsply Int'l, Inc.*, 180 Cal. App. 4th 1213, 1227 (2010).

9    Additionally, Plaintiff "must adequately plead reliance or privity in order to succeed on a breach

10   of express warranty claim." *Dei Rossi v. Whirlpool Corp.*, No. 2:12-CV-00125-TLN, 2015 WL

11   1932484, at \*9 (E.D. Cal. Apr. 28, 2015) ("[R]eliance on a seller's representations may provide

12   the basis for an express warranty claim even absent privity." (citation omitted)).

13         Defendants argue Plaintiff's vague allegations about the express warranty are insufficient.

14   (ECF No. 16 at 21 (citing ECF No. 13 ¶ 44).)  Further, Defendants contend there are no

15   allegations about how plaintiff's surgeon reasonably relied on the warranty nor how the breach of

16   the warranty caused plaintiff's injury.  (*Id.*)  In opposition, Plaintiff argues the allegations are

17   sufficient.  (ECF No. 17 at 17.)  Specifically, Plaintiff cites paragraph forty-four in the First

18   Amended Complaint where she alleges "Defendants . . . expressly . . . warranted that the subject

19   product and all of its related parts and components would be of merchantable quality and

20   reasonably fit for their intended purpose."  (ECF No. 17 at 17 (citing ECF No. 13 ¶ 44).)

21         The Court finds these general and conclusory allegations do not sufficiently support an

22   express warranty claim.  It is unclear what Defendants are alleged to have stated, nor is it clear

23   whether the unspecified statements were "the basis of the bargain."  *See Weinstat*, 180 Cal. App.

24   4th at 1227.  Without such factual allegations, it is unclear what express warranty is alleged to

25   have been breached.  *Id.*  Furthermore, it is unclear whether Plaintiff is attempting to allege

26   privity or reliance and Plaintiff provides no clarity on this point in opposition.  *Coleman v. Bos.*

27   *Sci. Corp.*, No. 1:10-CV-01968, 2011 WL 1532477, at \*6 (E.D. Cal. Apr. 20, 2011) (finding

28   insufficient allegations alleged regarding plaintiffs' reliance on defendant's representations).

1    Accordingly, to the extent Plaintiff's breach of warranty claim is based on an express

2  warranty, Plaintiff's claim is DISMISSED with leave to amend.

3            ii.      Implied Warranty[1]

4    Defendants argue Plaintiff's implied warranty claim should be dismissed based on privity,

5  because Plaintiff does not — and cannot —— establish it.  (ECF No. 16 at 21–22.)  According to

6  Defendants, patients lack the requisite privity in implantable medical product contexts.  (*Id.* at

7  21.)  In opposition, Plaintiff does not address Defendants' argument about her inability to

8  establish privity as a patient under these circumstances.  Instead, she simply argues she has

9  alleged privity because the First Amended Complaint states Defendants "designed, built,

10  manufactured, and sold the Endoclinch Grasper that injured" her. (ECF No. 17 at 17 (citing ECF

11  No. 13 ¶¶ 2, 3.)  Then, without citation to authority, Plaintiff contends privity exists because she

12  was "a foreseeable and obvious end user for the [D]efendants['] product."  (*Id.*)

13    Under California law, privity between parties is generally required for a breach of implied

14  warranty claim.  *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1023 (9th Cir. 2008).  "A

15  buyer and a seller stand in privity if they are in adjoining links of the distribution chain."  *Id.*

16  (citing *Osborne v. Subaru of Am. Inc.*, 198 Cal. App. 3d 646, 656 n.6 (1988)).  However, an end

17  consumer who buys from a retailer is not in privity with a manufacturer.  *Id.*  Despite Plaintiff's

18  arguments to the contrary, privity does not turn on foreseeability.  Accordingly, without more, the

19  Court finds Plaintiff has not alleged privity between herself and the Defendants.

20    Moreover, as the Court of Appeal explained in *Blanco v. Baxter Healthcare Corp.*, a

21  patient lacks the requisite privity to establish an implied warranty claim against a manufacturer in

22  the implantable medical device context.  158 Cal. App. 4th 1039, 1059 (2008).  According to the

23  court in *Blanco*, because the patient relied on her physician's skill and judgment to select a

24  suitable medical device and was not privy to the original transaction with the manufacturer, the

25  patient could not establish privity.  *Id.*  The Court finds this reasoning applicable here.  *See*

26  _____

27  [1]      The Court notes Plaintiff does not specify in the Complaint nor in her opposition whether she is alleging a breach of the implied warranty of merchantability or breach of the implied warranty of fitness for a particular purpose.  As such, the Court refers generally to Plaintiff's

28  "implied warranty" claim.

1    *Adams v. I-Flow Corp.*, No. 09-CV-09550-R-SSX, 2010 WL 1339948, at *4 (C.D. Cal. Mar. 30,

2    2010); *see also Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1024 (9th Cir. 2008) (noting

3    "California courts have painstakingly established the scope of the privity requirement . . . and a

4    federal court sitting in diversity is not free to create new exceptions to it").

5        Accordingly, because privity cannot be established under these circumstances, to the

6    extent Plaintiff's breach of warranty claim is based on the implied warranty, Plaintiff's claim is

7    DISMISSED without leave to amend.  *See also Schwartz v. Wright Med. Tech., Inc.*, No. 14-CV-

8    01615-JGB-SPX, 2014 WL 11320637, at *5 (C.D. Cal. Sept. 11, 2014) (finding the same and

9    dismissing claim without leave to amend); *Coleman*, 2011 WL 1532477, at *6 (dismissing

10    patients' implied warranty claims against implantable medical device manufacturers with

11    prejudice); *Tapia*, 116 F. Supp. 3d at 1160 (dismissing breach of implied warranty claim with

12    prejudice for lack of privity between patient and manufacturer of implanted medical devices).

13        **IV.    CONCLUSION**

14        Accordingly, for the reasons set forth above, the Court GRANTS Defendants' motion

15    (ECF No. 16) and GRANTS in part Plaintiff's request to amend (ECF No. 17) as follows:

16        1.    Plaintiff's strict liability and negligence claims are DISMISSED with leave to

17            amend;

18        2.    Plaintiff's breach of warranty claim is DISMISSED.  To the extent Plaintiff's

19            breach of warranty claim is based on an express warranty, Plaintiff's claim is

20            DISMISSED with leave to amend.  To the extent Plaintiff's claim is based on an

21            implied warranty, the claim is DISMISSED without leave to amend.

22        Plaintiff may file an amended complaint no later than thirty (30) days after the electronic

23    filing date of this Order.  If Plaintiff files an amended complaint, Defendants shall file any

24    responsive pleading no later than twenty-one (21) days from the filing date of the amended

25    complaint.

26    //

27    //

28    //

1          IT IS SO ORDERED.

2       Date: January 22, 2025

3

4

5       _____

6       TROY L. NUNLEY
        CHIEF UNITED STATES DISTRICT JUDGE
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28